IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HILDA L. SOLIS, Secretary of Labor,
United States Department of Labor,

     Plaintiff,

vs.                                       No. CIV 11-0406 JB/KBM

SUPPORTING HANDS, LLC and
MARK DEBOIS,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Summary Judgment, filed December 13, 2012 (Doc. 20)("Summary Judgment Motion"); (ii) the Defendant Mark DuBois' Motion for Court Appointed Public Defender, filed October 17, 2012 (Doc. 17); (iii) the Plaintiff's Motion to Compel Answers to Interrogatories and Responses to Request for Production of Documents, filed October 29, 2012 (Doc. 19)("Motion to Compel"); and (iv) Plaintiff's Motion to Strike Pleadings of and Enter Default Judgment Against Defendant Supporting Hands, LLC, filed December 13, 2012 (Doc. 21)("Default Judgment Motion").  The Court held a hearing on February 5, 2013.  The primary issue is whether the Court should grant summary judgment against Defendants Supporting Hands, LLC and Mark DuBois on the back-pay claims of Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor, because the undisputed material facts show that the Defendants violated the minimum wage, overtime, and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA").  The Court concludes that there is no genuine issues as to any material facts, that the Defendants violated the minimum wage, overtime, and record-keeping provisions of the FLSA,

that Supporting Hands and DuBois are jointly and severally liable for back pay that they owe to their employees in the amount of $17,632.53, that they are liable for an equal amount as liquidated damages, and that the Plaintiff is entitled to judgment in the amount of $35,265.06 as a matter of law. The Court will thus deny the Motion for Court Appointed Public Defender, will grant the Summary Judgment Motion, will grant in part and deny in part the Motion to Compel, and will deny the Default Judgment Motion as moot.

## FACTUAL BACKGROUND

The Defendants did not respond to the Plaintiff's Summary Judgment Motion.  Because the Defendants failed to file a written opposition to the motion for summary judgment, the Defendants are deemed to have consented to the granting of the Summary Judgment Motion. See D.N.M.LR-Civ. 7.1(b)("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."); D.N.M.LR-Civ. 7.6(a) ("A response must be served within fourteen (14) calendar days after service of the motion.").  Furthermore, because the Defendants have not filed a timely written response contesting any of the paragraphs in the Plaintiff's statement of the undisputed facts, the Court may take the facts as the Plaintiff has stated them.  D.N.M.LR-Civ. 56.1(b) states in relevant part:

> A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Because the Defendants have not "specifically controverted" any of the

-2-

Plaintiff's stated facts, the Court deems them admitted.  Nevertheless, the Court has recognized that "the United States Court of Appeals for the Tenth Circuit has encouraged district courts to decide motions for summary judgment on the merits."  Two Old Hippies, LLC v. Catch the Bus, LLC, 807 F. Supp. 2d 1059, 1061 (D.N.M. 2011)(Browning, J.)(citing Woods v. Roberts, No. 94-3159, 1995 WL 65457, at *2 (10th Cir. 1995)(unpublished)("[T]his circuit has expressed concern that pro se litigants not have their suits dismissed on summary judgment merely because they have failed to comply with the technical requirements involved in defending such a motion.")).  Cf. Hancock v. Okla. City, 857 F.2d 1394, 1396 (10th Cir. 1988); Jaxon v. Circle K Corp., 773 F.2d 1138, 1140 (10th Cir. 1985)("The rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits.")(quoting Garaux v. Pulley, 739 F.2d 437, 439 (9th Cir. 1984)).  Because Dubois is proceeding pro se -- and although Supporting Hands is unrepresented by counsel -- the Court will consider the Plaintiff's Summary Judgment Motion on the merits rather than defaulting the Defendants for procedural violations.[1]  In the end, however, the Defendants have not contested

---

[1] The Court has previously noted that an LLC cannot proceed in the United States District Court for the District of New Mexico without counsel's representation.  In Two Old Hippies, LLC v. Catch the Bus, LLC, 784 F. Supp. 2d 1221, (D.N.M. 2011)(Browning J.) the Court stated:

> In the District of New Mexico, "[a] corporation or a partnership must be represented by an attorney authorized to practice before this Court." D.N.M.LR–Civ. 83.7. Local rule 83.8(c) provides:
>
>> When the party is a corporation or partnership, the attorney must give notice in the motion to withdraw that a corporation or partnership can appear only with an attorney. Absent entry of

any of the Plaintiff's factual assertions, and there is nothing in the record before the Court that suggests that the Plaintiff's factual assertions are not sound or lack factual support.  As such, the issues are not in material dispute and what remains for decision is whether the Plaintiff is entitled to judgment as a matter of law.

The United States Department of Labor, Wage and Hour Division ("Wage and Hour Division") conducted an investigation of the Defendants beginning on or about September 5, 2008 through September 3, 2010 (the "investigative period").  Declaration of James Massengale

---

appearance by a new attorney, any filings made by the party may be stricken and default judgment or other sanctions imposed.

D.N.M.LR–Civ. 83.8(c).    Local rule 83.8(c) applies to limited liability companies, like Catch the Bus.

. . . .

In addition to being a District of New Mexico Local Rule, it has also been a long standing legal principle that a corporation must be represented by an attorney to appear in federal court.

Two Old Hippies, LLC v. Catch the Bus, LLC, 784 F. Supp. 2d 1221, 1222-23 (D.N.M. 2011) (Browning, J.).  The Court informed DuBois that Supporting Hands must be represented by counsel to proceed at the initial scheduling conference on April 17, 2012.  See Clerk's Minutes at 1, filed April 17, 2012 (Doc. 13).  Moreover, at the February 5, 2013 hearing on this Summary Judgment Motion, the Court again advised DuBois that Supporting Hands needed to retain counsel to avoid entry of default judgment against it.  See Transcript of Hearing at 3:3-17 (taken February 5, 2013)(Court, DuBois)("Tr.")("The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.").  Pursuant to the Court's suggestion, DuBois filed a letter with the clerk of the court asking whether an attorney from the Court's Pro Se Civil Rights Selection Committee would be willing to represent him and Supporting Hands.  See Letter to the Clerk of the Court, filed February 6, 2013 (Doc. 29).  The Pro Se Civil Rights Selection Committee voted four against two not to represent DuBois and Supporting Hands, notice of which was sent to DuBois' address, but was returned as undeliverable.  See Notice, filed March 4, 2013 (Doc. 30); Notice Undeliverable, filed March 8, 2013 (Doc. 31).  Thus, Supporting Hands remains unrepresented.

¶ 2, at 1, filed December 13, 2012 (Doc. 20-1)("Massengale Decl."); Summary Judgment Motion ¶ 1, at 2 (setting forth this fact).  DuBois is Supporting Hands' only principal.  See Clerk's Minutes, at 1; Deposition of Mark DuBois at 48:23-25 (taken Nov. 16, 2012), filed December 13, 2012 (Doc. 20-2)("DuBois Depo."); Summary Judgment Motion ¶ 3, at 2 (setting forth this fact).  Supporting Hands' main office is located at 4909 Ellison Street, Suite B, Albuquerque, New Mexico, 87109. See Massengale Decl. ¶ 2, at 1; Summary Judgment Motion ¶ 3, at 2 (setting forth this fact).

During the period from May 2009 to September 2010, Supporting Hands operated institutions primarily engaged in the care of the sick, the aged, or the mentally ill who reside on the institutions' premises. See DuBois Depo. at 14:15-15:18, 44:1-10; Summary Judgment Motion ¶ 4, at 3. Also during this period, Supporting Hands has been providing services with its employees engaged in commerce or handling materials that have moved in interstate commerce, and Supporting Hands' annual gross volume of sales made or business done has not been less than $500,000.00 during this time.  See DuBois Depo. at 44:11-46:20.  Both Defendants are covered by the FLSA and are employers as the FLSA defines that term.  See DuBois Depo. at 19:1-8, 47:2-5.

Wage and Hour Division's Wage and Hour Investigator James Massengale prepared a summary of the Defendants' former and current employees' unpaid back-wages owed for the time period from May 16, 2009, to September 3, 2010.  See Wage and Hour Form 56, Massengale Decl. at 6-9 (dated Nov. 27, 2012)("WH-56").  The Defendants' records substantiated that the employees listed on the WH-56 were the Defendants' employees from May 16, 2009, to September 3, 2010.  See Massengale Decl. ¶ 7, at 2; Complaint at 6-7, filed May 11,

2011 (Doc. 1)(listing affected employees' names); Summary Judgment Motion ¶ 2, at 2 (setting forth this fact). Except for a few alterations, the time and payroll records that the Defendants provided to Massengale accurately recorded the hours per week and the wages paid to Defendants' employees listed on the WH-56. See DuBois Depo. at 19:17-25:24; Summary Judgment Motion ¶ 5, at 3 (setting forth this fact). The Defendants' time and payroll records indicate that the Defendants did not pay their employees covered by the FLSA's overtime provisions one and one-half times their regular pay rate for the hours that the employees worked over forty hours in a week. Rather, the Defendants paid their employees working in excess of forty hours per week the employees' regular straight time rate of pay. See Massengale Decl. at ¶¶ 3 & 4, at 1; DuBois Depo. at 40:14-43:21; Summary Judgment Motion ¶ 5, at 3 (setting forth this fact). DuBois admitted at his deposition that, since he was teenager, he was aware that the law requires employees working more than forty hours in a week to be paid one and one-half times their regular pay rate for hours worked in excess of forty hours per week. See Dubois Depo. at 11:23-12:4, 20:1-5, 34:2-12; Motion for Summary Judgment ¶ 11, at 8 (setting forth this fact).

In a few instances, the Defendants changed their employees' time records to alter the employees' time worked. See DuBois Depo. at 27:6-19;[2] Summary Judgment Motion ¶ 6, at 3

_____

[2] The Defendants used a company, Payday, that allowed the Defendants to record their time electronically. DuBois explained in his deposition testimony that the employees "would clock in and clock out by calling Payday," which "would electronically record their times in and out." DuBois Depo. at 26:22-27:2. DuBois testified that he and a former employee, Rebekah Zaring, had authority to call Payday and "tell[] them we were having a problem . . . if the[] [employee] clocked in too early or forgot to clock out, . . . we could go in there and change the times." DuBois Depo. at 27:3-9. Thus, it does not appear that there was a physical time punch card or physical time sheets which the Defendants used to record their employees' time worked,

(setting forth this fact).  Massengale ascertained when this happened by examining the time records and comparing them with the records of the employees' telephone calls to clock in and out.  See Massengale Decl. ¶ 5, at 2; DuBois Depo. at 26:18-28:24; Summary Judgment Motion ¶ 6, at 3 (setting forth this fact).  Massengale determined that an employee, on average, was deprived of 7.5 minutes of time each time that the Defendants altered an employee's time records.  These altered time records were the reason that the employer did not maintain accurate time and payroll records.  See Massengale Decl. ¶ 5 at 2; Summary Judgment Motion ¶ 6, at 3-4 (setting forth this fact).  On at least one occasion during the relevant period, the Defendants made deductions from the pay of one employee -- Iesha Martinez -- who owed the Defendants money to pay back a loan.  These deductions from Martinez' pay brought her wages below the minimum wage pay rate in multiple weeks.  See Massengale Decl. ¶ 6, at 2.  DuBois testified at his deposition that, occasionally, the Defendants would lend employees money and they would deduct the loan from the employee's next two or three paychecks, regardless whether the deductions brought the employee's wages below the minimum wage.  See DuBois Depo. at 28:8-29:14; Summary Judgment Motion ¶ 7, at 4 (setting forth this fact).  Massengale determined that, over the time period that the Wage and Hour Division investigated, May 16, 2009, through September 3, 2010, the Defendants owed their employees a total of $17,632.53 in back pay.  See Massengale Decl. ¶ 7, at 2; Summary Judgment Motion ¶ 8, at 4.  All but a few hundred dollars of the back pay due to the employees, except for the few instances where the Defendants altered the employees' time records, are for unpaid overtime, and all back pay were calculated and derived directly from the Defendants' time and payroll records which they submitted to the

---

but rather the employees' time records were stored electronically.

Wage and Hour Division.  See Massengale Decl. ¶ 7, at 2; Summary Judgment Motion ¶ 8, at 4.

On October 7, 2010, Massengale held a conference with DuBois, at which Massengale informed DuBois that the Defendants had violated the FLSA by failing to pay their employees one and one-half times their regular pay rate for hours worked in excess of forty per week, by altering employees' time records, by deducting money due from one employee's wages that brought her wages under the minimum wage, and by failing to keep accurate records.  At the conference, Massengale presented DuBois with a Wage and Hour Form 56, which summarized the back pay that the Defendants owed to their employees.  See Massengale Decl. ¶ 8, at 3; Summary Judgment Motion ¶ 9, at 4 (setting forth this fact).  The Wage and Hour Form 56 that Massengale presented to DuBois at the October 7, 2010 conference is different from the WH-56 form that the Plaintiff attached to the Summary Judgment Motion, because it summarized the back pay owed for the period from September 5, 2008, through September 3, 2010, whereas the WH-56 attached to the Summary Judgment Motion summarizes back pay owed from May 16, 2009 through September 3, 2010, to limit the back pay owed to a period within the two-year statute of limitations.  See Massengale Decl. at 3 n.1; Summary Judgment Motion at 5 n.2 (setting forth this fact).  DuBois agreed at the conference to comply with the FLSA in the future, but refused to pay any back pay to the Defendants' employees. See Massengale Decl. ¶ 8, at 3; Summary Judgment Motion ¶ 9, at 4-5 (setting forth this fact).

The time and payroll records reflect that the Defendants engaged in a pattern and practice of not paying their employees for all hours worked and not paying their employees the overtime rate for hours worked in excess of forty hours per week.  See Massengale Decl. ¶ 9, at 3; Summary Judgment Motion ¶ 10, at 5 (setting forth this fact).  These facts demonstrate that the

Defendants cannot show that they had an honest intention to ascertain and follow FLSA's dictates during the investigation's time period.

## PROCEDURAL BACKGROUND

On May 11, 2011, the Plaintiff filed the Complaint, asking the Court to enjoin the Defendants from violating the FLSA, to restrain the Defendants from withholding minimum wage payment and/or overtime compensation, and to award liquidated damages to the affected employees at an amount equal to their damages.  See Complaint at 1.  The Complaint alleges that, during the period since September 5, 2008, the Defendants violated the FLSA by paying their employees less than minimum wage.  See Complaint ¶ 5, at 3.  The Complaint also alleges that the Defendants violated FLSA over the same time period by employing their employees in excess of forty hours per week without compensating their employees at time and a half for those hours worked in excess of forty.  See Complaint ¶ 6, at 3.  Additionally, the Complaint alleges that the Defendants failed to properly keep adequate and accurate time records for their employees as the FLSA requires, noting specifically that "their records failed to show, among other things, the hours worked each day and the total hours worked each week by many of their employees."  Complaint ¶ 9, at 4.

### 1.    DuBois' Motion for Court Appointed Public Defender.

On October 17, 2012, DuBois filed his Motion for Court Appointed Public Defender, requesting that the Court appoint a public defender to represent the Defendants.  DuBois asserts that neither he nor Supporting Hands "have the financial ability to hire an attorney at this present time."  Motion for Court Appointed Public Defender at 1.  He further states: "Since the court requests that an attorney represent the defendant, the defendant prays that the court will grant this

request to appoint a public defender to represent the defendant."  Motion for Court Appointed Public Defender at 1.

The Plaintiff filed the Plaintiff's Response to Defendants' Motion for Court Appointed Public Defender on October 24, 2012.  See Doc. 18 ("Defender Response").  The Plaintiff asks the Court to deny DuBois' motion.  The Plaintiff points out: (i) Supporting Hands has not provided to the Court any support for its asserted financial inability to pay for an attorney; (ii) because this is a civil proceeding, Supporting Hands is not entitled to a public defender; and (iii) there is no law which entitles Supporting Hands to any court-appointed attorney.  See Defender Response at 1-2.

## 2.    **The Motion to Compel.**

On October 29, 2012, the Plaintiff filed the Motion to Compel, asking the Court to enter an Order compelling the Defendants to answer the Plaintiff's First Set of Interrogatories to Defendants, filed October 29, 2012 (Doc. 19-1), and to respond to the Plaintiff'ss First Request for Production of Documents to Defendants, filed October 29, 2012 (Doc. 19-2).  See Motion to Compel at 1.  The Plaintiff notes that these documents were served on the Defendants on September 7, 2012, and that Defendants have yet to respond.  See Motion to Compel ¶¶ 1-2, at 1-2.  The Plaintiff notes that, on October 23, 2012, the Plaintiff's counsel called the Defendants to inquire about their answers to the discovery requests and, upon reaching only their voice mail, "left a detail[ed] message setting forth the reason for [the] call and informing Defendants that a motion to compel would be filed if Defendants failed to return the call of Plaintiff's counsel." Motion to Compel ¶ 3, at 2.  The Plaintiff asserts that the Defendants have yet to respond to the voice mail.  See Motion to Compel ¶ 3, at 2.  The Plaintiff also asserts that rule 37(a)(5)(A) of

the Federal Rules of Civil Procedure provides for court-ordered fees associated with the Motion to Compel, including attorneys' fees, and asks that the Court award those fees.  See Motion to Compel ¶ 4, at 2.  On December 20, 2012, the Plaintiff filed the Notice Certifying that Plaintiff's Motion to Compel is Ready for Decision (Doc. 22)("Compel Notice"), pointing out that, according to D.N.M.LR-Civ. 7.4(e), the Motion to Compel is ready for the Court's decision, because more than fourteen days have passed since the Plaintiff filed the motion and the Defendants have not responded.  See Compel Notice at 1.

**3.   Summary Judgment Motion.**

On December 13, 2012, the Plaintiff filed the Summary Judgment Motion, asserting that the Court should enter judgment on the FLSA cause of action, because the undisputed facts demonstrate: (i) the Defendants are subject to the FLSA and are employers under the FLSA; (ii) the "Defendants violated the minimum wage, overtime, and record keeping provisions of the FLSA, 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2) and 215(a)(5)"; (iii) the "Defendants owe their current and former employees back pay amounting to $17,632.53"; (iv) the "Defendants had no good faith defense for violating" FLSA and are therefore "liable for liquidated damages in an amount equal to the amount of the back pay, for a total judgment of $35,265.06"; and (v) the "Defendants need to be enjoined from future violations of the FLSA."  Summary Judgment Motion at 1-2.

The Plaintiff asserts that there is no dispute that the Defendants violated FLSA Section 7, which requires employers to pay covered employees one and one half times their regular rate of pay for each hour worked in excess of forty each week, because the facts establish that, until September 2010, the Defendants compensated their employees by paying them the same hourly

rate for all hours worked.  See Summary Judgment Motion at 6 (citing 29 U.S.C. § 207(a)(1)).

The Plaintiff contends that there is no dispute that the

> Defendants altered the time cards of employees, thereby depriving them of pay
> for all hours worked and violating the record keeping requirements of Section 11
> of the FLSA, 29 U.S.C. § 211, and deducted wages for money due from one
> employee that brought that employee's wages below the minimum wage in
> violation of Section 6 of the FLSA, 29 U.S.C. § 206.

Summary Judgment Motion at 6-7.  The Plaintiff asserts that DuBois' control of Supporting

Hands makes him jointly liable for the FLSA violation.  See Summary Judgment Motion at 7.

The Plaintiff also contends that, because the Defendants have failed to show an honest intention

to ascertain and follow the FLSA's dictates, 29 U.S.C. § 216(c) provides that liquidated damages

are warranted.

The Plaintiff argues that DuBois and Supporting Hands are both employers under the

FLSA, because DuBois stated in his deposition testimony that he is an employer under FLSA,

and because, as it is "well settled that 'managerial responsibilities' and 'substantial control of the

terms and condition of the work' create statutory employer status," DuBois' status as the sole

principal of Supporting Hands supports finding that DuBois is a FLSA employer.  Summary

Judgment Motion at 7 (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)).  The Plaintiff

additionally points out that the "[c]ourts have consistently held that a corporate officer with

operational control of a corporation's covered enterprise is an employer under [the FLSA] and is

jointly and severally liable for unpaid wages, along with the corporation."  Summary Judgment

Motion at 7-8.

The Plaintiff argues that, because the Defendants' time and payroll records reflecting

when the employees called to clock in and out accurately recorded the Defendants' employees'

hours and the wages that they received, and because "[t]hose records clearly indicate that Defendants failed to pay their employees one and one-half times their regular rate for hours worked in excess of forty per week," the Defendants violated FLSA's Section 7, which requires employers to pay covered employees one and one-half times "their 'regular' rate of pay for each hour worked in excess of forty during any given workweek."  Summary Judgment Motion at 8 (quoting 29 U.S.C. § 208(a)(1)).  The Plaintiff argues that the Defendants violated the FLSA by altering their employees' time records.  See Summary Judgment Motion at 8-9.  The Plaintiff points out that the FLSA requires an employer to pay its employees "for all time that it allows its employees 'to suffer or permit to work,'" which courts have construed to require that employees "be paid for all time 'controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'"  Summary Judgment Motion at 8-9 (quoting 29 U.S.C. § 203(g); Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944)).  The Plaintiff asserts that the Defendants violated the FLSA by altering their employees' recorded time in their time records and depriving their employees, on average, of 7.5 minutes each time that the Defendants altered the time records.  See Summary Judgment Motion at 9.

The Plaintiff argues that the Defendants also violated the FLSA by deducting amounts from one employee's wages, which brought her wages below the minimum wage.  See Summary Judgment Motion at 9.  The Plaintiff notes that "[d]eductions from an employee's wages, for whatever purpose, that result in that employee being paid below the minimum wage violates Section 6 of the FLSA."  Summary Judgment Motion at 9 (citing 29 U.S.C. § 206; Donovan v. Simmons Petroleum Corp., 725 F.2d 83, 84 (10th Cir. 1983)).  The Plaintiff points out that DuBois admitted in his deposition testimony that the Defendants would loan money to

employees and deduct the amount of the loan from the next two or three paychecks, even if those deductions brought the employee's wages below the minimum wage rate, and thus admitted to FLSA violations.  See Summary Judgment Motion at 9.  The Plaintiff next argues that the Defendants' alterations of their employees' time records violated FLSA Section 11(c), because these alterations prevented the Defendants from maintaining records of employees' time worked under 29 U.S.C. § 211(c)'s strictures.  See Summary Judgment Motion at 10 (citing, as an e.g. cite, Donovan v. White Beauty View, Inc., 556 F. Supp. 414, 416 (M.D. Pa. 1982)).

The Plaintiff asserts that the Defendants are subject to FLSA Section 16(c)'s provision of mandatory liquidated damages equivalent to the employees' actual damages, because the Defendants cannot meet their burden to show that they acted in good faith and with reasonable grounds for believing that they were in compliance with FLSA.  See Summary Judgment Motion at 11 (citing 29 U.S.C. § 216(c); Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (9th Cir. 1996)). The Plaintiff points out that DuBois was Supporting Hands' sole owner and principal, and that he admitted multiple times during his deposition testimony "that he has known since he was a teenager that the law requires employees working more than forty hours per week be paid one and one-half times their regular rate of pay for all time worked in excess of forty hours per week."  Summary Judgment Motion at 11.  The Plaintiff adds:

> Defendants in this case did much more than merely failing to ascertain whether their pay practices were in conformity with [FLSA].  In this case, Defendants instituted and followed pay practices that directly contradicted what they knew the law required.  Accordingly, Defendants cannot establish a good faith defense to liability or liquidated damages

Summary Judgment Motion at 11.  The Plaintiff argues that the Court should exercise its discretion to grant prospective injunctive relief and to enjoin the Defendants from any future FLSA violations.  See Summary Judgment Motion at 12.  She asserts that, because DuBois

-14-

controlled Supporting Hands when the FLSA violations occurred and still controls Supporting Hands, and because the law directs that there "'should be assurances in place that the offending party will in the future voluntarily comply with the Act,'" the Court should enjoin the Defendants from any future FLSA violations.  Summary Judgment Motion at 12 (quoting <u>Wirtz v. Flame Coal Co.</u>, 321 F.2d 558, 560 (6th Cir. 1963)).

On January 2, 2013, the Plaintiff filed the Notice Certifying that Plaintiff's Motion for Summary Judgment is Ready for Decision.  <u>See</u> Doc. 23("SJ Notice").  The Plaintiff asserts that, according to D.N.M.LR-Civ. 7.4(e), the Summary Judgment Motion is ready for the Court's decision, because more than fourteen days have passed since the Plaintiff filed the motion, and the Defendants have not filed a response in opposition to the motion.  <u>See</u> SJ Notice at 1.

### 4.      **The Default Judgment Motion.**

On December 13, 2012, The Plaintiff filed the Default Judgment Motion, moving the Court "for an Order striking the pleadings of and entering Default Judgment against Defendants for their" FLSA violations.  Default Judgment Motion at 1.  As grounds for striking the pleadings and entering default judgment against the Defendants, the Plaintiff points out that, on January 20, 2012, DuBois filed his Answer to Complaint (Doc. 4), on behalf of himself and Supporting Hands.  <u>See</u> Default Judgment ¶ 2, at 1. The Plaintiff also notes that, on April 17, 2012, the Court held an Initial Scheduling Conference on the case and informed DuBois that, under the Court's local rules and consistent with its decision in <u>Two Old Hippies, LLC v. Catch the Bus, LLC</u>, 784 F. Supp. 2d at 1221, counsel must represent Supporting Hands to avoid default judgment.  <u>See</u> Default Judgment Motion ¶ 3, at 2.  The Plaintiff asserts that, notwithstanding a letter from the Clerk of the Court also informing DuBois that counsel must represent Supporting Hands, Supporting Hands has not retained an attorney.  <u>See</u> Default Judgment Motion ¶ 4-5, at 2.   The

Plaintiff asserts that, under the Court's local rules and consistent with <u>Two Old Hippies, LLC v.</u> <u>Catch the Bus, LLC</u>, the Court should strike the Defendants' pleadings and enter a default judgment against Supporting Hands.  <u>See</u> Default Judgment Motion at 6-7.  As to damages, the Plaintiff incorporates the Summary Judgment Motion:

> As to the amount of damages and other relief to which Plaintiff is entitled, Plaintiff specifically incorporates herein her Motion for Summary Judgment, which was filed concurrently with this motion. In her Motion for Summary Judgment, Plaintiff shows that the undisputed material facts entitled her to judgment of $35,265.06 against Defendant Supporting Hands and an order permanently enjoining Supporting Hands from violating the FLSA.

Default Judgment Motion at 3.  On January 2, 2013, the Plaintiff filed the Notice Certifying that Plaintiff's Motion to Strike Pleadings of and Enter Default Judgment Against Defendant Supporting Hands, LLC is Ready for Decision.  <u>See</u> Doc. 24 ("Default Notice").  The Plaintiff points out that, according to D.N.M.LR-Civ. 7.4(e), the Default Judgment Motion is ready for the Court's decision, because more than fourteen days have passed since the Plaintiff filed the motion without the Defendants filing any response.  <u>See</u> Default Notice at 1.

### 5.    <u>February 5, 2012 Hearing on the Motions</u>.

At the hearing on the motions, the Court first took up DuBois' Motion for Court Appointed Public Defender.  The Court noted that federal public defenders represent only criminal defendants in criminal cases, and thus the Court cannot appoint a federal public defender to represent Supporting Hands.  <u>See</u> Tr. at 2:12-20 (Court).  The Court noted that, although there is no right to free representation in civil proceedings, DuBois may write a letter to the Clerk of the Court asking the Pro Se Committee to appoint an attorney to represent the Defendants.  <u>See</u> Tr. at 2:21-3:2 (Court).  DuBois responded that, since the Initial Scheduling Conference in April 2012, he had talked to several attorneys, but none of whom would represent

-16-

him pro bono, and he could not afford to pay any of them to represent him.  See Tr. at 3:8-16 (DuBois).   In response, the Plaintiff noted that the Defendants have made no showing of financial inability to pay, were put on notice almost a year earlier that default judgment against Supporting Hands was a possibility without attorney representation, and that the Court should therefore deny the motion.  See Tr. at 3:23-4:6 (Moyed).  The Court then denied the Motion for Court Appointed Public Defender, but told DuBois that if he sends a letter to the Clerk of the Court and notifies the Court's Courtroom Deputy about the letter, the Court would ask the Clerk of the Court to refer the letter to the Pro Se committee.  See Tr. at 4:13-5:3 (Court, DuBois).

The Court then asked the Plaintiff, because she filed the remaining three motions, in which order she preferred to discuss them.  See Tr. at 5:7-10 (Court).  The Plaintiff responded that, "if the motion for summary judgment is granted and the case is not remanded [back] to this Court [on appeal] the motion to compel really becomes moot," but nevertheless, discussing the Motion to Compel first is preferable, as it "is very simple."  Tr. at 5:11-14, 5:19 (Moyed).  The Plaintiff asserted that the Court should grant the Motion to Compel and order the Defendants to respond to the discovery requests, because, the Plaintiff has received "[n]o answers, no responses, no nothing, absolutely nothing . . . .  It's just a complete failure, complete[ly] ignoring [] the responsibility."  Tr. at 5:19-25 (Moyed).  In response to the Court's question whether DuBois had any response to the Motion to Compel, DuBois stated only that he was "not really sure what I should say . . . .  So sorry."  Tr. at 6:4-7 (DuBois).  The Court stated that it will grant the Motion to Compel and "require the Defendants to answer the interrogatories and respond to the request for production," and ordered the Defendants "to respond with answers to interrogatories and responses to requests for production within 20 days of today."  Tr. at 6:11-18, 72-5 (Court).  The Court told the Plaintiff that, if an award of expenses and fees for the Motion

-17-

to Compel were demanded, to file an affidavit with the calculations included after checking with DuBois to determine if there is any objection to the calculations. <u>See</u> Tr. at 7:9-20 (Court, Moyed).

In regard to the Summary Judgment Motion, the Plaintiff noted that the Defendants have not yet responded to the motion. <u>See</u> Tr. at 7:24-8:1 (Moyed). The Plaintiff stated that Massengale's declaration attached to the Summary Judgment Motion is a compilation of the investigation's relevant findings, and, in concert with DuBois' deposition testimony, establish that DuBois and Supporting hands owe their employees a total of $17,632.53. <u>See</u> Tr. at 8:1-5. The Plaintiff pointed out that the back pay alleged in the Complaint are limited to the period two years before the lawsuit was filed, and that the lion's share of those back pay represents unpaid overtime, and about $300.00 represents minimum wage violations. <u>See</u> Tr. at 8:5-11 (Moyed). The Plaintiff asserted that, beyond failing to pay their employees one and one-half times their regular hourly wage for overtime, the Defendants violated FLSA by modifying their employees' time cards without their employees' knowledge or permission, and deducting amounts from their employees' paychecks for alleged outstanding loans, which in one case brought an employee's wages below minimum wage. <u>See</u> Tr. at 8:12-24 (Moyed). The Plaintiff is pursuing liquidated damages in accordance with the statute, as the Defendants have made no showing of good faith, and, given that there is no good faith present, the Plaintiff is also asking the Court to enjoin the Defendants from any further FLSA violations. <u>See</u> Tr. at 9:1-14 (Moyed). In response to the Court's inquiry, the Plaintiff clarified that the statutory liquidated damages amount to $35,256.06, because that is twice the amount that the Defendants owe their employees as back pay. <u>See</u> Tr. at 9:15-22 (Court, Moyed).

DuBois responded that he does not agree with the Plaintiff's lawsuit. <u>See</u> Tr. at 10:4

(DuBois).  He stated that, at his deposition, he tried to explain his "position" that "we've never taken money from anybody that didn't work for us."  Tr. at 10:6-8 (DuBois).  He explained that, when employees would come in twenty or thirty minutes early, clock in, and "do nothing," he would go in and change their time card to reflect that they were not working, and was not aware that he had to pay those employees for that time, as "I always thought it was for hours worked." Tr. at 10:8-12 (DuBois).  He explained that, when employees asked for additional work, he told them that he could not afford to pay them overtime pay, but offered to give them an additional job -- a job different from their normal job -- and then had them sign an agreement that it was a separate job and that they would thus not receive overtime pay for hours worked over forty per week.  See Tr. at 10:12-17 (DuBois).  In relation to the minimum wage violations, DuBois noted that he would occasionally lend money to employees and, to reduce the burden on the employee, would then deduct that amount over the employee's next two or three paychecks.  See Tr. at 10:17-22 (DuBois).  DuBois asserted: "I've never cheated anyone out of any money whatsoever. So I do disagree with [the Summary Judgment Motion]."  Tr. at 11:5-6 (DuBois).

The Plaintiff replied that nothing in DuBois' response creates a genuine issue of material fact in relation to the Summary Judgment Motion:

> DuBois is saying that he had employees . . . signing agreements, waiving their right to get over time.  Such agreements are invalid under the Fair Labor Standards Act and there's really been no evidence put forth of that.  What Mr. DuBois was testifying to was they had employees working two different jobs at two different rates.  The combination of those two jobs put them over 40 hours. The law would require that the regular rate of pay be recalculated for that week and over time for the hours over 40 be paid at a premium of one-half of the regular rate for the hours over 40.  That was not done.
>
> And again there's no evidence of any of this here, so we would request the judgment be entered in the Government's favor, Your Honor.

Tr. at 11:11-24 (Moyed).

The Court responded that, in light of the Tenth Circuit's suggestion that district courts should decide Summary Judgment Motions on the merits even in a case such as this, where there has been a procedural default, the Court will decide the motion on its merits.  See Tr. at 12:1-10 (Court).  The Court noted that, in effect, this also provides DuBois additional time to retain a lawyer for Supporting Hands and respond in some manner to the Summary Judgment Motion. The Court noted, however, that, if the Defendants do not prepare responses, the Court would likely grant the motion.  See Tr. at 12:11-20.

In regard to the Default Judgment Motion, the Plaintiff noted that the motion "is a backup motion and . . . . would prefer judgment against both Defendants as the summary judgment . . . seeks."  Tr. at 13:4-8 (Moyed).  She added that the Default Judgment Motion asks that the Court strike the Defendants' Answer to Complaint, and to enter default judgment against Supporting Hands in accordance with the Court's local rules and its decision in Two Old Hippies, LLC v. Catch the Bus, LLC.  See Tr. at 13:8-12 (Moyed).  In response to the Court's inquiry whether DuBois had any response to the Default Judgment Motion, DuBois responded: "I really don't know what to say."  Tr. at 13:15-16 (DuBois).  The Court stated that, while the Default Judgment Motion is well taken, the Court will first rule on the Summary Judgment Motion and then, if the Summary Judgment Motion does not moot the Default Judgment Motion, rule on the Default Judgment Motion at that time.  See Tr. at 13:20-14:4.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving

party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.

1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). Once the movant meets this burden, rule 56 requires the non-moving party to designate

specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477

U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

      The party opposing a motion for summary judgment must "set forth specific facts

showing that there is a genuine issue for trial as to those dispositive matters for which it carries

the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238,

1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir.

1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific

facts showing that there is a genuine issue for trial as to those dispositive matters for which it

carries the burden of proof." (internal quotation marks omitted)). Rule 56(c)(1) provides: "A

party asserting that a fact . . . is genuinely disputed must support the assertion by . . . . citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It

is not enough for the party opposing a properly supported motion for summary judgment to "rest

on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477

U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson

v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating

conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue

whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## RELEVEANT LAW REGARDING THE FLSA

The FLSA requires covered employers to pay a minimum wage and to pay their nonexempt employees overtime pay of time and one half their regular rate of pay for hours worked in excess of forty in a work week.  See 29 U.S.C. §§ 206-207.  FLSA provides four means of enforcement: (i) criminal prosecutions for willful violators, see 29 U.S.C. § 216(a); (ii) individual rights of actions in civil suits to recover unpaid minimum wages, overtime compensation and certain liquidated damages, see 29 U.S.C. § 216(b); (iii) a cause of action allowing the Secretary of the Department of Labor to recover employees' damages and for additional recovery of "an equal amount of liquidated damages," 29 U.S.C. § 216(c); and (iv) a suit for injunctive relief, see 29 U.S.C. § 217.  "The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"

Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981)(alterations in original)(quoting 29 U.S.C. § 202(a)).

1.      **Employers under FLSA.**

The FLSA defines "employer" broadly:

"Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203.   "Whether an employment relationship exists for the purposes of the FLSA turns on the 'economic reality' of the working relationship." Saavedra v. Lowe's Home Cntrs., Inc., 748 F. Supp. 2d 1273, 1285 (D.N.M. 2010)(Browning, J.)(quoting Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961)).   The Supreme Court of the United States has instructed courts to construe the terms "employer" and "employee" expansively under the FLSA. Nationwide Mutual Ins. Co. v. Darden, 503 U.S. 318, 326 (1992).  See Falk v. Brennan, 414 U.S. at 195 (recognizing "the expansiveness of the Act's definition of 'employer'"); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)("[T]here is in the [FLSA] no definition that solves problems as to the limits of the employer-employee relationship under the Act . . . .   The definition of 'employ' is broad.").  The Tenth Circuit has similarly recognized that "[t]he terms 'employ' and 'employer' are given . . . broad . . . definitions." Johnson v. Unified Gov't of Wyandotte Cnty., 371 F.3d 723, 729 (10th Cir. 2004).

The statute is a remedial one, written in the broadest possible terms . . . .   It runs counter to the breadth of the statute and to the Congressional intent to impose a qualification which permits an employer who exercises substantial control over a worker, but whose hiring decisions occasionally may be subjected to a third party's veto, to escape compliance with the Act.

Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir.1984).  Employer includes persons or entities that have "managerial responsibilities" which gives the person or entity "substantial control of the terms and conditions of the work of [its] employees."  Falk v. Brennan, 414 U.S. at 195.  "Corporate officers who have a substantial ownership interest in the corporation, and who are directly involved in decisions affecting employee compensation, may be held personally liable under the FLSA."  Saavedra v. Lowe's Home Centers, Inc., 748 F. Supp. 2d at 1288 (citing Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)).  See Fegley v. Higgins, 19 F.3d 1126, 1131 (6th Cir 1994); Reich v. Circle C Inv. Inc., 998 F.2d 324, 329 (5th Cir. 1993); Donovan v. Grim Hotel Co., 747 F.2d 966, 972 (5th Cir. 1984); Donovan v. Janitorial Services, Inc., 672 F.2d 530, 531 (5th Cir. 1982); Shultz v. Mack Farland & Sons Roofing Co., 413 F.2d 1296, 1300 (5th Cir. 1969).

### 2.     FLSA's Minimum Wage, Overtime, and Records Requirements.

FLSA's Section 7 requires employers to pay covered employees who, in a given workweek, work more than forty hours, "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  "The purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'"  Chavez v. City of Albuquerque, 630 F.3d 1300, 1304 (10th Cir. 2011). "Contractual stipulations as to the regular rate are not controlling, because the regular rate is an 'actual fact,' rather than 'an arbitrary label chosen by the parties.'"  Chavez v. City of Albuquerque, 630 F.3d at 1305.  The Tenth Circuit has recognized "that a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due . . . . [as] parties cannot avoid the purposes of the FLSA by

designating a fictitious regular rate." <u>Chavez v. City of Albuquerque</u>, 630 F.3d at 1305 (citing <u>Walling v. Wall Wire Prods. Co.</u>, 161 F.2d 470, 473 (6th Cir.1947)).

Under the FLSA, an employer must pay its employees for the time that it "employ[s]" them, the statutory definition of which means "to suffer or permit to work." 29 U.S.C. § 203(g). <u>See</u> 29 C.F.R. § 785.6 ("By statutory definition the term 'employ' includes (section 3(g)) 'to suffer or permit to work.' The act, however, contains no definition of 'work'".). "'The test for whether an employee's time constitutes working time is whether the time is spent predominantly for the employer's benefit or for the employee's.'" <u>United Transp. Union Local 1745 v. City of Albuquerque</u>, 178 F.3d 1109, 1116 (10th Cir. 1999)(quoting <u>Gilligan v. City of Emporia</u>, 986 F.2d 410, 412 (10th Cir. 1993)). The Supreme Court has rejected the argument that Congress' intent in FLSA was to compensate employees "for all actual work . . . as those words are commonly used -- as meaning physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." <u>Armour & Co. v. Wantock</u>, 323 U.S. 126, 132 (1944)(quoting <u>Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123</u>, 321 U.S. at 597).

> Of course an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.

<u>Armour & Co. v. Wantock</u>, 323 U.S. at 133.

FLSA's Section 6 requires employers to pay their employees a minimum wage. <u>See</u> 29 U.S.C. § 206(a). Deductions from employees' paychecks, for whatever reason, that brings the

employees' pay under the minimum wage violates FLSA § 6.   See Donovan v. Simmons Petroleum Corp., 725 F.2d at 84 (holding that the employer's deductions of "cash register shortages and the amount of uncollectible checks accepted by its employees from the paychecks of employees who were on duty when the shortages occurred" was a willful violation of FLSA). Cf. Dole v. Solid Waste Servs., Inc., 733 F. Supp. 895, 924 (E.D. Pa. 1989)(finding that deductions "for lunch breaks during which [employees were] required to continue with any duties relating to . . . work," bringing employees below minimum wage, violated FLSA), aff'd, 897 F.2d 521 (3d Cir. 1990), and aff'd sub nom. Appeal of Solid Waste Servs., Inc., 897 F.2d 524 (3d Cir. 1990).

Additionally, FLSA Section 11 imposes on an employer a duty to "make, keep, and preserve" records of its employees' wages, hours, and "other conditions and practices of employment" that the employer may maintain.  29 U.S.C. § 211(c).  In Donovan v. Simmons Petroleum Corp., the Tenth Circuit recognized the FLSA's duty to keep accurate records in discussing the shift between the employee and employer of the burden to prove damages:

> The employee bears the burden of proving he performed work for which he was not properly compensated.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 . . . (1946).  However, employers have a duty to keep accurate records.  If employers do not keep accurate records the employee's burden is extremely difficult.  In order to prevent the employee from being penalized by the employer's failure to keep adequate records, the Supreme Court held in Anderson that an employee carries his burden by proving that he has "in fact performed work for which he was improperly compensated and . . . [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  Upon such a showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence. If the employer does not rebut the employee's evidence, then damages may be awarded even though the result is only approximate.  The employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law. Id. at 687-88 . . . .

Donovan v. Simmons Petroleum Corp., 725 F.2d at 85-86.   The Wage and Hour Division requires that employers must maintain in the records are the time of day and day of the week on which the employee's workweek begins, the regularly hourly pay rate for the employee in any week in which overtime compensation is due, hours worked each workday and workweek, total daily or weekly straight-time earned, and total overtime.   See 29 C.F.R. § 516.2(a).   Where an employer violates its § 211(c) record-keeping duties, including by not counting time worked before and after an employee's shift begins, the employer cannot meet its burden to rebut the Labor and Wage investigators' reasonable estimates of backpay due to the employees.   See United States Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 781 (6th Cir. 1995)("We agree with the district court's conclusion that the calculations of the investigator are a reasonable and generous estimate of the back wages due to the Defendants' employees for the pre-shift and post-shift hours worked."); Metzler v. IBP, Inc., 127 F.3d 959, 965-66 (10th Cir. 1997)("When the employer has failed to record compensable time . . . .   [t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of [29 U.S.C. § 211(c)].").

### 3.   FLSA's Remedies.

Actions to enforce the FLSA's overtime provisions are generally subject to a two-year statute of limitations unless the violation is willful, in which case the limitations period is three years.   A lawsuit "to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages," 29 U.S.C. § 255,

> if the cause of action accrues on or after May 14, 1947 -- may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

29 U.S.C. § 255(a). Willful violations occur when "the employer either knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the [FLSA]." McLaughlin v.

Richland Shoe Co., 486 U.S. 128, 133 (1988)(citing Trans World Airlines, Inc. v. Thurston, 469

U.S. 111 (1985)).

Beyond the actual damages to cover the amount of unpaid minimum wages or overtime

compensation, FLSA's Section 16(c) allows additional recovery of "an equal amount of

liquidated damages."  29 U.S.C. § 216(c).  The Tenth Circuit has noted: "The purpose for the

award of liquidated damages is 'the reality that the retention of a workman's pay may well result

in damages too obscure and difficult of proof for estimate other than by liquidated damages.'"

Renfro v. City of Emporia, 948 F.2d 1529, 1540 (10th Cir. 1991)(quoting Laffey v. Nw.

Airlines, Inc., 567 F.2d 429, 463 (D.C. Cir. 1976).  If the employer can show that the conduct

giving rise to the action to recover back pay was in good faith, and that the employer had

reasonable grounds to believe the conduct was lawful, the court may refuse to award some or all

liquidated damages:

> Under 29 U.S.C. § 260, if in any action to recover unpaid overtime compensation
> an employer "shows to the satisfaction of the court that the act or omission giving
> rise to such action was in good faith and that he had reasonable grounds for
> believing that his act or omission was not a violation of the FLSA," the court may
> refuse to award liquidated damages.
>
> > All circuits that have considered the matter hold that the trial court
> > may eliminate or reduce the award of liquidated damages only if
> > the employer shows both that he acted in good faith and that he
> > had reasonable grounds for believing that his actions did not
> > violate the Act.

Renfro v. City of Emporia, 948 F.2d 1529, 1540 (10th Cir. 1991)(quoting Doty v. Elias, 733 F.2d

720, 725 (10th Cir. 1984)).  The employer bears the burden to prove that the conduct was

-29-

reasonable and in good faith.  See Renfro v. City of Emporia, Kan., 948 F.2d at 1540.  For purposes of assessing whether the employer meets its burden, "[t]he good faith requirement mandates the employer have 'an honest intention to ascertain and follow the dictates of the Act.  The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior.'"  Renfro v. City of Emporia, Kan., 948 F.2d at 1540 (quoting Doty v. Elias, 733 F.2d at 725).  See Garcia v. Tyson Foods, Inc., 890 F. Supp. 2d 1273, 1295 (D. Kan. 2012)("While the employer must prove subjective good faith, it must also prove that its actions were objectively reasonable.  If the employer meets that burden the court retains discretion whether to award liquidated damages." (citations omitted)).

FLSA's Section 17 provides that district courts "shall have jurisdiction, for cause show, to restrain [FLSA] violations . . . including . . . the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter . . . ."  29 U.S.C. § 217(c).  The question whether a court should grant an injunction is left to the court's sound discretion.  See Mitchell v. Hertzke, 234 F.2d 183, 187 (10th Cir. 1956)("Although it is not clearly stated in these Labor Standards Act cases that the burden of proving the need for an injunction is upon the movant[,] that is a general principle of law and applies with legal force here.").  "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.  Current compliance alone, particularly when achieved by direct scrutiny of the government, is not sufficient ground for denying injunctive relief."  Metzler v. IBP, Inc., 127 F.3d at 963 (internal citations and alterations omitted)(quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953); Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383 (9th Cir.

-30-

1987)). In exercising its discretion to grant a prospective injunction after finding a previous FLSA violation, "courts balance that finding against factors indicating a reasonable likelihood that the violation will not recur, such as the employer's intent to comply, extraordinary efforts taken to prevent recurrence, the absence of repetitive violations, and the absence of bad faith." Metzler v. IBP, Inc., 127 F.3d at 963-64 (Martin v. Coventry Fire Dist., 981 F.2d 1358, 1362 (1st Cir. 1992)).

## ANALYSIS

For the reasons stated on the record at the hearing, the Court will deny DuBois' Motion for Court Appointed Public Defender. The Court will grant summary judgment in The Plaintiff's favor, because there are no genuine issues as to any material facts, and she is entitled to judgment as a matter of law. As DuBois admitted in his deposition testimony, he, in addition to Supporting Hands, is an employer for FLSA's purposes, because he is Supporting Hands' sole principal and manager. The Defendants violated the FLSA's overtime requirements by altering their employees' time records to alter the time when the employees were clocked in, but, according to DuBois, doing nothing. The Defendants also violated the FLSA's overtime requirements by failing to pay their employees who worked over forty hours in a workweek one and one-half of the employees' normal wages, because, notwithstanding that the Defendants contend the employees were working in two different positions, their employment exceeded the forty-hour limit. The Defendants violated the FLSA's minimum wage requirements by deducting amounts from their employees' paychecks, as reimbursements for loans to their employees, and brought the employees' total compensation below minimum wages. Because of these violations, the Defendants owe their employees $17,632.53 in back pay, and, because the Defendants' violations were not in good faith and were objectively unreasonable, the Plaintiff is

entitled to recover liquidated damages in an equal amount.  Additionally, the Court concludes that the factors a district court must consider in granting a permanent injunction under FLSA weigh in favor of granting the Plaintiff's request to permanently enjoin the Defendants from further FLSA violations.  Accordingly, the Court will enjoin the Defendants from any further FLSA violations.

## I.      THE DEFENDANTS ARE EMPLOYERS UNDER THE FLSA.

The definition of employer under FLSA "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency."  29 U.S.C. § 203.  The Tenth Circuit has noted that, under the FLSA, "[t]he terms 'employ' and 'employer' are given . . . broad . . . definitions."  Johnson v. Unified Gov't of Wyandotte Cnty., 371 F.3d at 729.  Employer includes persons or entities who have "managerial responsibilities" that gives the person or entity "substantial control of the terms and conditions of the work of employees."  Falk v. Brennan, 414 U.S. at 195.  Thus, "[c]orporate officers who have a substantial ownership interest in the corporation, and who are directly involved in decisions affecting employee compensation, may be held personally liable under the FLSA."  Saavedra v. Lowe's Home Centers, Inc., 748 F. Supp. 2d at 1288 (citing Donovan v. Agnew, 712 F.2d at 1511).  Ultimately, "[w]hether an employment relationship exists for the purposes of the FLSA turns on the 'economic reality' of the working relationship."  Saavedra v. Lowe's Home Cntrs., Inc., 748 F. Supp. 2d at 1285 (quoting Goldberg v. Whitaker House Co-op., Inc., 366 U.S. at 33).

Both Defendants are employers as FLSA defines that term.  First, DuBois admitted in his deposition that he and Supporting Hands are both employers for FLSA purposes.  See DuBois Depo. at 19:1-8, 47:2-5.  Beyond DuBois' admission however, it is undisputed that the employees on behalf of whom the Plaintiff brings the lawsuit are Supporting Hands' employees,

and it is undisputed that DuBois is Support Hands' sole principal.  See Clerk's Minutes, at 1; DuBois Depo. at 48:23-25.  The Court has recognized that "'[c]orporate officers who have a substantial ownership interest in the corporation, and who are directly involved in decisions affecting employee compensation, may be held personally liable under the FLSA." Saavedra v. Lowe's Home Centers, Inc., 748 F. Supp. 2d at 1288 (citing Donovan v. Agnew, 712 F.2d at 1511).  As evidenced by his admissions that he changes the employees' time records, that he offers to employ his employees in second jobs to avoid overtime compensation, and that it is his decision, when he loans employees money, to deduct those sums from their paychecks, DuBois is directly involved in decisions, which he makes on Supporting Hands' behalf, affecting employee compensation, and is a "person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203.  Because DuBois is Supporting Hands' corporate officer, its owner/operator, and directly involved in decisions affecting employee compensation, the Court thus concludes that DuBois, in addition to Supporting Hands, is an employer for FLSA's purposes.

"Contractual stipulations as to the regular rate are not controlling, because the regular rate is an 'actual fact,' rather than 'an arbitrary label chosen by the parties.'"  Chavez v. City of Albuquerque, 630 F.3d at 1305.  The Tenth Circuit has recognized "that a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due . . . . [as] parties cannot avoid the purposes of the FLSA by designating a fictitious regular rate." Chavez v. City of Albuquerque, 630 F.3d at 1305 (citing Walling v. Wall Wire Prods. Co., 161 F.2d 470, 473 (6th Cir.1947)).  The Court therefore concludes that the Defendants are both employers under the FLSA.

## II.    THE DEFENDANTS VIOLATED FLSA'S MINIMUM WAGE AND OVERTIME

PROVISIONS.

The Defendants violated FLSA by failing to pay their employees minimum wage when, in the case of one employee, the Defendants deducted amounts from her paycheck for payments on a loan, bringing her hourly wage below the minimum wage.  Additionally, the Defendants violated FLSA's overtime provisions by altering their employees' time records to deduct time when their employees were clocked in at work, and by failing to pay their employees for employment over forty hours in a workweek.  The Defendants thus failed to pay their employees overtime in violation of FLSA.

A.      THE DEFENDANTS VIOLATED FLSA'S SECTION 7 BY FAILING TO PAY THEIR EMPLOYEES OVERTIME WAGES.

Under the FLSA, an employer must pay its employees for the time that it "employ[s]" them, the statutory definition of which means "to suffer or permit to work."  29 U.S.C. § 203(g). FLSA's Section 7 requires employers to pay covered employees who, in a given workweek, are "employed" more than forty hours, "at a rate not less than one and one-half times the regular rate at which [the employee] is employed."  29 U.S.C. § 207(a)(1).  "'The test for whether an employee's time constitutes working time is whether the time is spent predominantly for the employer's benefit or for the employee's.'"  United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d at 1116 (quoting Gilligan v. City of Emporia, 986 F.2d at 412).  "The purpose of FLSA overtime is 'to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost.'"  Chavez v. City of Albuquerque, 630 F.3d at 1304.  "Contractual stipulations as to the regular rate are not controlling, because the regular rate is an 'actual fact,' rather than 'an arbitrary label chosen by

-34-

the parties.'"   Chavez v. City of Albuquerque, 630 F.3d at 1305.   The Tenth Circuit has recognized "that a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due . . . . [as] parties cannot avoid the purposes of the FLSA by designating a fictitious regular rate." Chavez v. City of Albuquerque, 630 F.3d at 1305 (citing Walling v. Wall Wire Prods. Co., 161 F.2d 470, 473 (6th Cir.1947)).

Massengale determined, from employee interviews, that the Defendants altered their employees' time records to deduct time from the total time that the employees had been clocked in, and determined that, on average, the Defendants deprived an employee of 7.5 minutes of time each time a particular time-worked record was altered.   DuBois at the hearing explained that, when employees would come in twenty or thirty minutes early, clock in, and "do nothing," he would go in to the employee's records and change the time that the records reflected the employee having worked to deduct that time, and was not aware that he had to pay those employees for that time, stating: "I always thought it was for hours worked." Tr. at 10:8-12 (DuBois).   The Supreme Court long ago rejected the invitation to define work as actual labor, however, noting that, "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." Armour & Co. v. Wantock, 323 U.S. at 133.   Rather, the Supreme Court noted that "[r]efraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity," and determined that the standard for time spent working under FLSA turns on "[w]ether time is spent predominantly for the employer's benefit or for the employee's . . . ." Armour & Co. v. Wantock, 323 U.S. at 133.   See United Transp. Union Local 1745 v. City of Albuquerque, 178 F.3d at 1116 ("'The test for whether an employee's time constitutes working time is whether the time is spent predominantly for the employer's benefit or for the employee's.'")(quoting Gilligan

-35-

v. City of Emporia, 986 F.2d at 412).  When the Defendants' employees clocked in before the beginning of their shift, they were "refraining from other activity" and available for employment. Armour & Co. v. Wantock, 323 U.S. at 133.  The Plaintiff reasonably found that this time was time worked, and because the Defendants altered their employees' time records to deprive them of overtime pay for this time worked, the Defendants violated FLSA's section 7.

In addition to altering their employees' time records when their employees, according to DuBois, clocked in and did "nothing," DuBois also explained that, when employees asked for additional work, he offered to give them a job different from their normal job, and then had them sign an agreement that it was a separate job and that they would thus not receive overtime pay for hours worked over forty per week.  See Tr. at 10:12-17 (DuBois).  The Tenth Circuit, however, has held that "a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due . . . . [as] parties cannot avoid the purposes of the FLSA by designating a fictitious regular rate." Chavez v. City of Albuquerque, 630 F.3d at 1305 (citing Walling v. Wall Wire Prods. Co., 161 F.2d at 473).  The FLSA's plain language provides that an employer must pay its employees one and one-half times the employee's regular rate "for [the employee's] employment in excess of" forty hours.  29 U.S.C. § 207(a)(1).  Congress did not qualify employment to be in one particular job beyond forty hours per week, but left it at the employee's employment with a particular employee.  Thus, FLSA precedent requires two employers to pay overtime to an employee working for the employers where the employers are treated as the same enterprise or joint employers.  See 29 C.F.R. § 791.2 (noting that, if an "employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one

employment for purposes of the Act."); <u>Schultz v. Capital Int'l Sec., Inc.</u>, 466 F.3d 298, 305 (4th Cir. 2006)("Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA."); <u>Zachary v. Rescare Okla., Inc.</u>, 471 F. Supp. 2d 1175, 1178 (N.D. Okla. 2006)("Separate entities that share control over an individual worker may be deemed 'joint employers' under the FLSA.")(citing 29 C.F.R. § 791.2).  The undisputed facts show that, regardless under what job title the employee in question worked, the Defendants were the employers for the employees' employment over forty hours in one workweek.  Whereas the FLSA joint employer test treats two employers, where "employment by one employer is not completely disassociated from employment by the other employer(s)," 29 C.F.R. § 791.2, as one employer under the act, Supporting Hands employed all the employees at issue.  Regardless how many separate jobs any of the Defendants' employees held at Supporting Hands, because all work in question was work for Supporting Hands and DuBois, all of their employees' work "for . . . [Supporting Hands as the] employer[] during the workweek is considered as one employment for purposes of [FLSA]."  29 C.F.R. § 791.2.  The Court therefore concludes that the Defendants' failure to pay their employees time and one-half for hours worked over forty at their employment at Supporting Hands, regardless of the title under which they were employed by Supporting Hands, violated FLSA section 7.

## B.    THE DEFENDANTS VIOLATED FLSA'S SECTION 6 BY PAYING AN EMPLOYEE LESS THAN MINIMUM WAGE.

FLSA's Section 6 requires employers to pay their employees a minimum wage.  <u>See</u> 29 U.S.C. § 206(a).  Deductions from employees' paychecks, for whatever reason, that brings the employees' pay under the minimum wage violates FLSA § 6.  <u>See</u> <u>Donovan v. Simmons Petroleum Corp.</u>, 725 F.2d at 84 (holding that the employer's deductions of "cash register

shortages and the amount of uncollectible checks accepted by its employees from the paychecks of employees who were on duty when the shortages occurred" was a willful violation of FLSA). Cf. Dole v. Solid Waste Servs., Inc., 733 F. Supp. at 924 (finding that deductions "for lunch breaks during which he is required to continue with any duties relating to his work," which bring employees below minimum wage, violates FLSA).   The undisputed facts show that the Defendants took deductions from Martinez' wages, which brought her wages below the minimum wage during multiple weeks.  See Massengale Decl. ¶ 6, at 2.  In relation to the minimum-wage violations, DuBois noted that he would occasionally lend money to employees and, to reduce the burden on the employee, would then deduct that amount from the employee's next two or three paychecks.  See Tr. at 10:17-22 (DuBois).  Because these deductions resulted in employees being paid below the minimum wage, this conduct violated FLSA Section 6.  See 29 U.S.C. § 206; Donovan v. Simmons Petroleum Corp., 725 F.2d at 84 (holding that the employer's deductions of "cash register shortages and the amount of uncollectible checks accepted by its employees from the paychecks of employees who were on duty when the shortages occurred" was a willful violation of FLSA); Dole v. Solid Waste Servs., Inc., 733 F. Supp. at 924.  The Court therefore concludes that the Defendants owe Martinez back pay to bring her wages up to the minimum wage for those weeks in which deductions from her wages resulted in her being paid less than the minimum wage.

## III.   THE DEFENDANTS OWE THEIR EMPLOYEES $17,632.53 IN WAGES AND OVERTIME COMPENSATION.

FLSA Section 11 imposes on an employer a duty to "make, keep, and preserve" records of its employees' wages, hours, and of "other conditions and practices of employment" that the employer may maintain.  29 U.S.C. § 211(c).  The Tenth Circuit recognized FLSA's duty to keep

accurate records in discussing the shift between employee and employer of the burden to prove

damages:

> The employee bears the burden of proving he performed work for which he was not properly compensated.  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 . . . (1946).  However, employers have a duty to keep accurate records.  If employers do not keep accurate records the employee's burden is extremely difficult.  In order to prevent the employee from being penalized by the employer's failure to keep adequate records, the Supreme Court held in Anderson that an employee carries his burden by proving that he has "in fact performed work for which he was improperly compensated and . . . [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  Upon such a showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence.  If the employer does not rebut the employee's evidence, then damages may be awarded even though the result is only approximate.  The employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law. Id. at 687-88 . . . .

Donovan v. Simmons Petroleum Corp., 725 F.2d at 85-86.  Where an employer violates its §

211(c) record-keeping duties, including by not counting time worked before and after an

employee's shift begins, the employer cannot meet its burden to rebut the Labor and Wage

investigators reasonable estimates of back pay due to the employees.  See United States Dep't of

Labor v. Cole Enters., Inc., 62 F.3d at 781.

DuBois admitted during his deposition at the hearing on this Summary Judgment Motion

that the Defendants altered some employees' time records and failed to pay its employees

overtime wages for hours worked in their employment at Supporting Hands, where Supporting

Hands employed the employees in different jobs or under different titles.  These acts deprived

the Defendants' employees of overtime pay.  These acts additionally preclude the employer from

using time records to rebut the employees' proof of back pay by a preponderance of the

evidence.  See Monroe v. FTS USA, LLC, 763 F. Supp. 2d 979, 988 (W.D. Tenn. 2011)(finding

that, "where Defendants -- through individual supervisors and managers -- . . . altered timesheets that accurately reflected overtime hours . . . [the] Defendants' records are inaccurate or inadequate," and the Defendants could not rebut the employees' assertions of overtime pay damages); Robinson v. Food Serv. of Belton, Inc., 415 F. Supp. 2d 1227, 1229 (D. Kan. 2005)(concluding that, if "the time records are inaccurate or incomplete," because the plaintiffs' evidence that the defendants modified the time cards, "then plaintiffs' evidence concerning their damages is sufficient under Mount Clemens"); Donovan v. White Beauty View, Inc., 556 F. Supp. 414, 416 (M.D. Pa. 1982)(finding that the defendant's manipulation of time records to reduce actual hours worked deprived its employees of overtime wages and violated FLSA). The Plaintiff has presented competent evidence on behalf of the Defendants' employees that the Defendants' FLSA violations resulted in withholding from the Defendants' employees $17,632.53 in wages and overtime compensation. See Massengale Decl. ¶ 8; WH-56. Because DuBois altered the Defendants' employees time records, and thus violated FLSA's record-keeping provision in Section 11, the "employer does not rebut the employee's evidence, [and] damages may be awarded even though the result is only approximate." Donovan v. Simmons Petroleum Corp., 725 F.2d at 86. As the Supreme Court has recognized, "the employer cannot complain that the damages lack the precision that would have been possible if the employer had kept the records required by law." Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687-88. Based on the undisputed evidence before the Court, $17,632.53 is a reasonable approximation of the wages and overtime pay that the Defendants owe to their employees, and the Court therefore finds that that the Defendants owe their employees $17,632.53 in wages and overtime compensation.

**IV.    THE COURT WILL AWARD AN EQUAL AMOUNT IN LIQUIDATED**

**DAMAGES, BECAUSE THE DEFENDANTS' FLSA VIOLATION WAS NOT IN GOOD FAITH AND WAS NOT OBJECTIVELY REASONABLE.**

Beyond actual damages, FLSA's Section 16(c) allows additional recovery of "an equal amount of liquidated damages."  29 U.S.C. § 216(c).

> Under 29 U.S.C. § 260, if in any action to recover unpaid overtime compensation an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA," the court may refuse to award liquidated damages.

> > All circuits that have considered the matter hold that the trial court may eliminate or reduce the award of liquidated damages only if the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act.

Renfro v. City of Emporia, 948 F.2d at 1540 (quoting Doty v. Elias, 733 F.2d at 725).  The employer bears the burden to prove that the conduct was reasonable and in good faith.  See Renfro v. City of Emporia, 948 F.2d at 1540.  For purposes of assessing whether the employer has met its burden, "[t]he good faith requirement mandates the employer have 'an honest intention to ascertain and follow the dictates of the Act.  The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior.'"  Renfro v. City of Emporia, 948 F.2d at 1540 (quoting Doty v. Elias, 733 F.2d at 725).  See Garcia v. Tyson Foods, Inc., 890 F. Supp. 2d at 1295 ("While the employer must prove subjective good faith, it must also prove that its actions were objectively reasonable.  If the employer meets that burden the court retains discretion whether to award liquidated damages." (citations omitted)).

DuBois, the sole Supporting Hands owner and principal, testified multiple times in his deposition that he has known since he was a teenager that the law requires employees working

more than forty hours per week be paid one and one-half times their regular rate of pay for all time worked in excess of forty hours per week.  See Dubois Depo. at 11:23-12:4, 20:1-5, 34:2-12.  Despite this knowledge, the Defendants paid their employees only their regular rate of pay for hours worked in excess of forty per week.  Based on DuBois' assertions at the hearing, the Court does not find that the Defendants had an "honest intention to ascertain" and follow FLSA's dictates.  Renfro v. City of Emporia, 948 F.2d at 1540.  In this case, the Defendants instituted and followed pay practices that directly contradicted FLSA's dictates, and were objectively unreasonable given FLSA's intentions, plain language, and established law.  Accordingly, the Defendants cannot establish a good-faith defense to liability or to liquidated damages.  Because "the trial court may eliminate or reduce the award of liquidated damages only if the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate" FLSA, Renfro v. City of Emporia, 948 F.2d at 1540, the Court will grant the Plaintiff's request for an equal amount of liquidated damages.

## V.     THE COURT ENJOINS THE DEFENDANTS FROM ANY FURTHER FLSA VIOLATIONS.

FLSA's Section 17 provides that district courts "shall have jurisdiction, for cause shown, to restrain [FLSA] violations . . . including . . . the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter . . . ."  29 U.S.C. § 217(c).  "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.  Current compliance alone, particularly when achieved by direct scrutiny of the government, is not sufficient ground for denying injunctive relief."  Metzler v. IBP, Inc., 127 F.3d at 963 (internal citations and alterations omitted)(quoting United States v. W.T. Grant

Co., 345 U.S. 629, 633 (1953); Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383 (9th Cir. 1987)). In exercising its discretion to grant a prospective injunction after finding a previous FLSA violation, "courts balance that finding against factors indicating a reasonable likelihood that the violation will not recur, such as the employer's intent to comply, extraordinary efforts taken to prevent recurrence, the absence of repetitive violations, and the absence of bad faith." Metzler v. IBP, Inc., 127 F.3d at 963-64.

Here, the Plaintiff has satisfied the burden of proving that an injunction is necessary to prevent future violations.  See Mitchell v. Hertzke, 234 F.2d at 187 ("Although it is not clearly stated in these Labor Standards Act cases that the burden of proving the need for an injunction is upon the movant[,] that is a general principle of law and applies with legal force here.").  The same manager and owner of Supporting Hands in control at the time that the Defendants violated FLSA's minimum wage, overtime and record-keeping requirements remains in control of Supporting Hands.  The Defendants have not taken "extraordinary efforts . . . to prevent recurrence," Metzler v. IBP, Inc., 127 F.3d at 963-64, but have merely represented that they will not continue to violate FLSA.  The Defendants' conduct was unreasonable and did not evince any good faith intent to ascertain FLSA's dictates.  There is no indication that the Defendants will cease from violating provisions of the FLSA.  Further, after the investigation, DuBois agreed at the conference to comply with the FLSA in the future, but refused to pay any back-wages to Defendants' employees. See Massengale Decl. ¶ 8, at 3.  A district court in this circuit found that an injunction was warranted where, "although Defendants promised to pay the full amount of back wages due, they defaulted on the majority of the payment."  Solis v. Melt Brands Stores, LLC, Civil Action No. 11-cv-00292-CMA-BNB, 2012 WL 364685, at *4 (D. Colo. Feb. 2, 2012).  Refusal to pay cuts against any finding of good faith, and evidences bad faith.  The

Court therefore concludes that, under the circumstances and based on the Defendants' past noncompliance, failure to ascertain FLSA's requirements, and refusal to pay back pay, an injunction is appropriate to prevent future violations of the FLSA.

**IT IS ORDERED** that (i) the Defendant Mark Dubois' Motion for Court Appointed Public Defender, filed October 17, 2012 (Doc. 17), is denied; (ii) the Plaintiff's Motion to Compel Answers to Interrogatories and Responses to Request for Production of Documents, filed October 29, 2012 (Doc. 19), is granted in part and denied in part; (iii) the Plaintiff's Motion to Strike Pleadings of and Enter Default Judgment Against Defendant Supporting Hands, LLC, filed December 13, 2012 (Doc. 21), is denied as moot; and (iv) the Plaintiff's Motion for Summary Judgment, filed December 13, 2012 (Doc. 20), is granted.  The Court therefore:

1.      Awards the Plaintiff Hilda L. Solis, Secretary of the Department of Labor, attorneys' fees and costs incurred in filing and arguing the Motion to Compel; the Plaintiff shall send proposed calculations of fees and costs incurred to the Court and state whether the Defendants object to any amounts sought;

2.      Grants summary judgment in favor of the Plaintiff against Defendants Mark DuBois and Supporting Hands, LLC, such that the Defendants are jointly and severally liable for the amount of $17,632.53 in unpaid minimum wage and overtime compensation due its employees;

3.      Grants summary judgment in favor of the Plaintiff against the Defendants such that the Defendants are jointly and severally liable for the additional amount of liquidated damages, $17,632.53, bringing the total compensation due their employees to $35, 265.06; and

4.      Grants prospective injunctive relief against the Defendants, enjoining permanently the Defendants from any further violations of sections 7, 11(c), and 15(a)(5) of the

Fair Labor Standards Act of 1938.

_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Margaret Cranford
Richard M. Moyed
United States Department of Labor
Counsel for Wage and Hour
Dallas, Texas

      *Attorneys for the Plaintiff*

Mark DuBois
Supporting Hands, LLC
Albuquerque, New Mexico


      *Pro Se for Defendants Supporting Hands, LLC and Mark DuBois*